IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MATTHEW WIGHTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | Demand for Jury Trial |
| WEXFORD HEALTH SOURCES, INC., ) | |
| DR. MICHAEL BOROWICZ, *individually*, ) | |
| KELLY RICE, *individually*, ) | |
| and ) | |
| DARRYL ELLIS, *individually*, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Matthew Wightman brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff seeks compensatory and punitive damages, attorneys' fees, expenses and costs, and any other relief the Court deems appropriate. Plaintiff demands a trial by jury.

### INTRODUCTION

In November 2022, while housed at Staton Correctional Facility, Plaintiff Matthew Wightman was severely burned on his back, neck, and head. Despite knowing of Matthew's burns, the need for his burns to be frequently cleaned and bandaged, and the severe pain Matthew was in as a result of his burns, Wexford Health Sources, Inc., and its doctors, nurses, and other employees provided Matthew with almost no medical treatment. As a result, Matthew endured significant and unnecessary pain and his burns did not heal as quickly or as well as they would have with adequate medical care. Each defendant was either responsible for personally providing Matthew with necessary medical care, was responsible for ensuring that medical staff were adequately trained

and supervised to ensure that they provided Matthew with necessary medical care, or both. Nevertheless, each defendant failed to take reasonable steps to ensure that Matthew received necessary medical care. Because of the defendants' deliberate indifference, Matthew has been left permanently traumatized and disfigured.

## PARTIES

1. Plaintiff Matthew Wightman is a natural person over the age of 19.

2. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporate entity licensed to practice business in the State of Alabama.

3. At all relevant times, Wexford contracted with the Alabama Department of Corrections ("ADOC") to provide medical and mental health care to individuals in the custody of ADOC, including individuals like Plaintiff who were incarcerated at Staton Correctional Facility ("Staton").

4. Defendant Michael Borowicz, M.D., is a natural person over the age of 19.

5. At all relevant times, Dr. Borowicz was an employee and/or agent of Wexford and worked as a physician and as the Medical Director at Staton. As the Medical Director, Dr. Borowicz was a final policymaker for Wexford in matters related to the provision of medical care at Staton. As Medical Director, Dr. Borowicz was responsible for ensuring that all incarcerated individuals at Staton who needed medical care received it. Dr. Borowicz was also responsible for training and supervising members of Staton's medical staff to ensure that they provided necessary medical care to all incarcerated individuals at Staton.

6. Defendant Kelly Rice is a natural person over the age of 19.

7. At all relevant times, Defendant Rice was an employee and/or agent of Wexford and worked as the Charge Nurse at Staton. As the Charge Nurse, Defendant Rice was a final

policymaker for Wexford in matters related to the provision of medical care at Staton. As Charge Nurse, Defendant Rice was responsible for ensuring that all incarcerated individuals at Staton who needed medical care received it. Defendant Rice was also responsible for training and supervising members of Staton's medical staff to ensure that they provide necessary medical care to all incarcerated individuals at Staton.

8. Defendant Darryl Ellis is a natural person over the age of 19.

9. At all relevant times, Defendant Ellis was an employee and/or agent of Wexford and worked as the Health Services Administrator at Staton. As the Health Services Administrator, Defendant Ellis was a final policymaker for Wexford in matters related to the provision of medical care at Staton. As Health Services Administrator, Defendant Ellis was responsible for ensuring that all incarcerated individuals at Staton who needed medical care received it. Defendant Ellis was also responsible for training and supervising members of Staton's medical staff to ensure that they provide necessary medical care to all incarcerated individuals at Staton.

**JURISDICTION AND VENUE**

10. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights.

11. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

13. Plaintiff Matthew Wightman has been in the custody of the ADOC since December 2013.

14. At the time of the events that form the basis of this complaint, Matthew was incarcerated at Staton, located at 2690 Marion Spillway Road in Elmore, Alabama.

15. On or about the night of October 27, 2022, Matthew was asleep on his bed in F-dorm.

16. Sometime between midnight and 2:00 a.m., while Matthew was asleep lying on his side and covered with a blanket, another incarcerated individual threw hot liquid on him. The liquid burned Matthew on the back of his head and neck and across his entire back.

17. Matthew reported the attack to correctional staff and was taken to Staton's Healthcare Unit ("HCU").

18. Medical staff in the HCU called an ambulance, and Matthew was transported to Baptist Medical Center South in Montgomery, Alabama ("Baptist South").

19. At Baptist South, Matthew was told he had severe second-degree burns and needed to go to the trauma center at University of Alabama Birmingham ("UAB").

20. Matthew was transported to UAB via ambulance, where his burns were cleaned and bandaged and he received pain medication.

21. Matthew was released from UAB after several hours. He was given written and verbal instructions about how to care for his burns and treat his pain, as well as medical supplies.

22. The medical supplies included approximately one week's worth of silver sulfadiazine ointment and burn pads.

23. The instructions directed that his burns be cleaned and re-dressed two to three times per day. Because the burns were on Matthew's back, neck, and head, he could not physically clean or dress them himself.

24. The instructions directed that Matthew return to UAB in two weeks for a follow-up appointment.

25. The instructions also directed that Matthew be housed in the prison infirmary so that his burns could be adequately treated.

26. Matthew returned to the Staton HCU around noon on October 28, 2022.

27. Matthew gave the medical staff UAB's instructions. The correctional officer who had transported Matthew told the medical staff that UAB had directed that Matthew stay in the prison infirmary.

28. Nevertheless, and with no medical justification, the medical staff refused to house Matthew in the prison infirmary and directed correctional staff to send Matthew to population.

29. Upon information and belief, the medical staff refused to house Matthew in the prison infirmary because there were no open beds in the infirmary. Upon information and belief, the medical staff did so pursuant to a policy, practice, or custom of refusing to house incarcerated individuals, including Plaintiff, in the infirmary, even when it is medically necessary to do so, when the beds in the infirmary are full or close to full.

30. Upon information and belief, it was well known to the medical staff at Staton, including Defendants Borowicz, Rice, and Ellis, that, pursuant to the policy, practice, or custom described in Paragraph 29, medical staff frequently refused to house incarcerated individuals in the prison infirmary when it was medically necessary to do so. Nevertheless, Defendants Borowicz, Rice, and Ellis all refused to take any action to ensure that incarcerated individuals would be housed in the infirmary when it was medically necessary to do so.

31. The medical staff refused to take any steps to ensure that, even if not housed in the prison infirmary, Matthew received all necessary medical care for his burns.

32.  The medical staff also refused to let Matthew take the medical supplies provided by UAB with him.

33.  Upon information and belief, the medical staff refused to let Matthew take the medical supplies from UAB with him pursuant to a policy, practice, or custom of refusing to allow incarcerated individuals access to medical supplies without an order from Dr. Borowicz or another physician at Staton.

34.  Although Dr. Borowicz was available to examine Matthew and provide all necessary medical care to him upon his return to Staton, Dr. Borowicz refused to do so. In the alternative, medical staff failed to notify Dr. Borowicz of Matthew's medical condition upon Matthew's return to Staton pursuant to a policy, practice, or custom of not notifying Dr. Borowicz when incarcerated individuals return from an outside hospital.

35.  Because Staton's medical staff had taken UAB's care instructions when Matthew returned to Staton, all medical staff, including Dr. Borowicz, Defendant Rice, and Defendant Ellis, were aware that Matthew's burns needed to be cleaned and re-dressed two to three times per day.

36.  Because the medical staff refused to allow Matthew to stay in the prison infirmary, correctional staff placed Matthew in A-dorm, Staton's faith dorm.

37.  Three gated fences separate A-dorm from the HCU. Each gate is always locked and can only be opened by correctional staff. Correctional staff will not open the gates for any incarcerated individual who attempts to go to the HCU if that individual has not been called there. As a result, while housed in A-dorm, Matthew could not seek medical care on his own. Instead, he could only seek medical care if he was called to the HCU.

38. Dr. Borowicz, Defendant Rice, and Defendant Ellis all know that the only way an incarcerated individual, including Matthew, can receive medical care is if the individual is called to the HCU.

39. Dr. Borowicz, Defendant Rice, and Defendant Ellis all have the ability and responsibility to ensure that individuals who need medical care are called to the HCU.

40. Dr. Borowicz, Defendant Rice, and Defendant Ellis all also have the responsibility to adequately train and supervise members of Staton's HCU medical staff to ensure that the medical staff calls individuals who need medical care to the HCU.

41. Nevertheless, despite knowing of Matthew's severe burns and the need for his burns to be cleaned and re-dressed two to three times per day, Dr. Borowicz, Defendant Rice, and Defendant Ellis all refused to call Matthew to the HCU or to ensure that other medical staff called Matthew to the HCU. As a result, Matthew did not receive any medical treatment for his burns.

42. Because the medical staff had taken from Matthew the medical supplies from UAB Matthew had no medical supplies to treat his burns. Matthew had to improvise his medical treatment, treating his burns with A&D Ointment that another incarcerated individual had bought from the store and covering his burns with ripped-up pieces of t-shirts.

43. Because Matthew was unable to clean or dress the burns himself, he was forced to rely on other incarcerated individuals to help him do so.

44. Several days after returning from UAB, Matthew had not been called to the HCU. Matthew was in severe pain, and he asked ADOC Correctional Sergeant Davis if he could go to the HCU to get treatment for his burns. Sergeant Davis sent Matthew to the HCU.

45. When Matthew arrived at the HCU, Dr. Borowicz and Defendant Ellis refused to see him. ADOC Correctional Security Guard Cooper told Matthew to return to his dorm.

46. Matthew returned to his dorm.

47. Later that night, the pain from Matthew's burns got worse, and Matthew again asked to go to the HCU.

48. He was told that he could not go to the HCU if he did not have paperwork directing him to go there, and he was sent back to his dorm.

49. Several hours later, Matthew was called to the HCU.

50. Matthew went to the HCU and was seen by the nurse on duty. He told the nurse on duty that he was in severe pain from his burns. He described what had happened since he had been burned, including UAB's instructions that his burns be cleaned and re-dressed two to three times a day. He told the nurse on duty that he had not been receiving any medical treatment for his burns, and he described the actions he and other incarcerated individuals had been taking to attempt to treat his burns. He also removed his shirt and showed his burns to the nurse on duty.

51. The nurse on duty said she could not find Matthew's medical file, so she could not treat him.

52. Upon information and belief, the nurse on duty refused to treat Matthew pursuant to a policy, practice, or custom of refusing to treat incarcerated individuals, including Matthew, even when it is medically necessary to do so, when medical staff cannot locate and view the incarcerated individual's medical file.

53. Despite being aware of Matthew's serious medical need, the nurse on duty refused to take reasonable steps to locate Matthew's medical file or to find alternative ways to provide Matthew medical treatment.

54. The nurse on duty sent Matthew back to his dorm without giving him any medical treatment.

55. Over the next several months, despite knowing of Matthew's injuries, the severe pain he was in, and the need for his burns to be cleaned and re-dressed two to three times per day, Dr. Borowicz and Defendant Rice continually refused to provide Matthew medical treatment.

56. Although Dr. Borowicz, Defendant Rice, and Defendant Ellis each had the ability and responsibility to ensure that other members of Staton's medical staff provided Matthew with medical treatment, they each failed to take any steps to do so.

57. As a result, Matthew did not receive necessary medical care for his serious medical need.

58. Dr. Borowicz, Defendant Rice, and Defendant Ellis also refused to allow Matthew to return to UAB for the ordered follow-up appointment.

59. From the time Matthew returned to Staton from UAB until his burns were healed, his burns were cleaned and re-dressed by Staton's medical staff only twice.

60. Because Matthew did not receive necessary medical care for his burns, his burns were delayed in healing, they did not heal as fully as they otherwise would have, and he suffered unnecessary and severe physical pain while his burns healed.

## COUNT I
**Violation of the Eighth Amendment – Dr. Michael Borowicz (Personal Liability)**

61. Plaintiff incorporates by reference paragraphs 1 through 60 of his Complaint.

62. Dr. Borowicz was responsible for providing Plaintiff with minimally adequate medical care while he was incarcerated at Staton, either by personally providing Plaintiff medical care or by ensuring that another member of the medical staff provided him medical care.

63. As described above, Dr. Borowicz was deliberately indifferent to Plaintiff's serious medical need. His deliberate indifference directly caused Plaintiff significant pain and suffering, lasting disability, and permanent disfigurement.

64. From the time Plaintiff returned from UAB, Dr. Borowicz knew that Plaintiff had a serious medical need that required treatment by Staton's medical staff. Nevertheless, Dr. Borowicz consistently refused to treat Plaintiff, denying him access to necessary medical care.

65. As a physician and the Medical Director at Staton, Dr. Borowicz had the ability and responsibility to ensure that members of Staton's medical staff provided Plaintiff with necessary medical care. Despite knowing of Plaintiff's serious medical need, Dr. Borowicz failed to take any action to ensure that Plaintiff received necessary medical care.

66. Dr. Borowicz's refusal to treat Plaintiff's burns and/or ensure that other members of Staton's medical staff treated Plaintiff's burns caused Plaintiff significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## COUNT II
**Violation of the Eighth Amendment – Dr. Michael Borowicz (Supervisory Liability)**

67. Plaintiff incorporates by reference paragraphs 1 through 60 of his Complaint.

68. As the Medical Director at Staton, Dr. Borowicz was responsible for training and supervising members of Staton's medical staff to ensure that they provided necessary medical care to all incarcerated individuals at Staton, including Plaintiff.

69. As described above, despite knowing of the need to adequately train and/or supervise members of Staton's medical staff to ensure that they provided necessary medical care to all incarcerated individuals, including Plaintiff, Dr. Borowicz failed to do so.

70. Dr. Borowicz's failure to train and/or supervise members of Staton's medical staff resulted in those individuals failing to provide Plaintiff with adequate medical care despite knowing of his serious medical need. For example, members of Staton's medical staff: (a) refused to house Plaintiff in the infirmary after he returned from UAB, even though doing so was necessary to provide Plaintiff with necessary medical care; (b) failed to ensure that Plaintiff had all medical

orders required for him to receive necessary medical care; (c) failed to ensure that orders existed for Plaintiff to come to the HCU two to three times each day to have his burns cleaned and re-dressed; (d) failed to ensure that Plaintiff's medical file was available to everyone working in the HCU as required to provide Plaintiff with necessary medical care; (e) failed to take reasonable steps to find Plaintiff's medical file or to find alternative ways to provide Plaintiff necessary medical care if his medical file was unavailable.

71. These failures by Dr. Borowicz and Staton's medical staff caused Plaintiff significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## COUNT III
### Violation of the Eighth Amendment – Kelly Rice (Personal Liability)

72. Plaintiff incorporates by reference paragraphs 1 through 60 of his Complaint.

73. Defendant Kelly Rice was responsible for providing Plaintiff with necessary medical care while Plaintiff was incarcerated at Staton.

74. As described above, Defendant Rice was deliberately indifferent to Plaintiff's serious medical need. Her deliberate indifference directly caused Plaintiff significant pain and suffering, lasting disability, and permanent disfigurement.

75. From the time Plaintiff returned from UAB, Defendant Rice knew that he had a serious medical need that required treatment by Staton's medical staff. Nevertheless, Defendant Rice consistently refused to treat Plaintiff, delaying and denying his access to necessary medical care.

76. As the Charge Nurse at Staton, Defendant Rice had the ability and responsibility to ensure that members of Staton's medical staff provided Plaintiff with necessary medical care.

Despite knowing of Plaintiff's serious medical need, Defendant Rice failed to take any action to ensure that Plaintiff received necessary medical care.

77. Defendant Rice's refusal to treat Plaintiff's burns and/or ensure that other members of Staton's medical staff treated Plaintiff's burns caused Plaintiff significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## COUNT IV
### Violation of the Eighth Amendment – Kelly Rice (Supervisory Liability)

78. Plaintiff incorporates by reference paragraphs 1 through 60 of his Complaint.

79. As the Charge Nurse at Staton, Defendant Rice was responsible for training and supervising members of Staton's medical staff to ensure that they provided necessary medical care to all incarcerated individuals at Staton, including Plaintiff.

80. As described above, despite knowing of the need to adequately train and/or supervise members of Staton's medical staff to ensure that they provided necessary medical care to all incarcerated individuals, including Plaintiff, Defendant Rice failed to do so.

81. Defendant Rice's failure to train and/or supervise members of Staton's medical staff resulted in those individuals failing to provide Plaintiff with adequate medical care despite knowing of his serious medical need. For example, members of Staton's medical staff: (a) refused to house Plaintiff in the infirmary after he returned from UAB, even though doing so was necessary to provide Plaintiff with necessary medical care; (b) failed to ensure that Plaintiff had all medical orders required for him to receive necessary medical care; (c) failed to ensure that orders existed for Plaintiff to come to the HCU two to three times each day to have his burns cleaned and re-dressed; (d) failed to ensure that Plaintiff's medical file was available to everyone working in the HCU as required to provide Plaintiff with necessary medical care; (e) failed to take reasonable

steps to find Plaintiff's medical file or to find alternative ways to provide Plaintiff necessary medical care if his medical file was unavailable.

82. These failures by Defendant Rice and Staton's medical staff caused Plaintiff significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## COUNT V
### Violation of the Eighth Amendment – Darryl Ellis (Supervisory Liability)

83. Plaintiff incorporates by reference paragraphs 1 through 60 of his complaint.

84. As the Health Services Administrator at Staton, Defendant Ellis was responsible for ensuring that all members of Staton's medical staff were adequately trained and supervised to ensure that they provided necessary medical care to all incarcerated individuals at Staton, including Plaintiff.

85. As described above, despite knowing of the need to ensure that members of Staton's medical staff were adequately trained and/or supervised members of Staton's medical staff so that they provided necessary medical care to all incarcerated individuals at Staton, including Plaintiff, Defendant Ellis failed to do so.

86. Defendant Ellis's failure to ensure that all members of Staton's medical staff were adequately trained and/or supervised resulted in those individuals failing to provide Plaintiff with adequate medical care despite knowing of his serious medical need. For example, members of Staton's medical staff: (a) refused to house Plaintiff in the infirmary after he returned from UAB, even though doing so was necessary to provide Plaintiff with necessary medical care; (b) failed to ensure that Plaintiff had all medical orders required for him to receive necessary medical care; (c) failed to ensure that orders existed for Plaintiff to come to the HCU two to three times each day to have his burns cleaned and re-dressed; (d) failed to ensure that Plaintiff's medical file was available

to everyone working in the HCU as required to provide Plaintiff with necessary medical care; (e) failed to take reasonable steps to find Plaintiff's medical file or to find alternative ways to provide Plaintiff necessary medical care if his medical file was unavailable.

87. These failures by Defendant Ellis caused Plaintiff significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## COUNT VI
### Violation of the Eighth Amendment – Wexford Health Sources, Inc.

88. Plaintiff incorporates by reference paragraphs 1 through 60 of his complaint.

89. Dr. Borowicz, Defendant Rice, and Defendant Ellis were all final policymakers for Wexford in matters relating to the provision of medical care at Staton.

90. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of delaying or denying incarcerated individuals, including Plaintiff, access to necessary medical care in order to minimize costs.

91. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of delaying or denying incarcerated individuals, including Plaintiff, access to necessary medical care in an effort to discourage incarcerated individuals, including Plaintiff, from seeking medical treatment, in order to minimize costs.

92. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of failing to prescribe to incarcerated individuals, including Plaintiff, medically necessary medications and/or medical equipment in order to minimize costs.

93. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of refusing to house incarcerated individuals, including Plaintiff, in the infirmary, even when it is medically necessary to do so, when the beds in the infirmary are full or close to full.

94. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of refusing to take reasonable steps to ensure that incarcerated individuals who are not housed in the infirmary pursuant to the policy, practice, or custom described in paragraph 92 are nevertheless provided with all necessary medical care.

95. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of refusing to provide necessary medical care to incarcerated individuals, including Plaintiff, if medical staff cannot locate the individual's medical file.

96. Wexford, on its own or, alternatively, through the final policymaking decisions of Dr. Borowicz, Defendant Rice, and/or Defendant Ellis, had a policy, practice, or custom of refusing to send incarcerated individuals, including Plaintiff, off-site to receive medical care, even when that care is necessary to provide medical treatment for serious injuries, in order to minimize costs.

97. Pursuant to these policies, Dr. Borowicz, Defendant Rice, and/or other Wexford medical staff failed to treat Plaintiff's severe burns.

98. Pursuant to these policies, Dr. Borowicz, Defendant Rice, and/or other Wexford medical staff failed to order that Plaintiff be sent to UAB for all required follow-up appointments.

99. Pursuant to these policies, Dr. Borowicz, Defendant Rice, and/or other Wexford medical staff refused to treat Plaintiff's severe pain except for with intermittent ibuprofen, which Dr. Borowicz knew was not sufficient to treat Plaintiff's pain.

100. Plaintiff's failure to receive necessary medical care caused him significant pain and suffering and resulted in him experiencing a lasting disability and permanent disfigurement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against all the defendants, jointly and severally, and also order as follows:

a. Find in favor of Plaintiff on all counts;

b. Award compensatory damages to Plaintiff, against all defendants, in an amount to be determined at trial;

c. Award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial;

d. Award Plaintiff recovery of attorneys' fees and other costs; and

e. Award any other relief the Court deems appropriate.

Respectfully submitted this 28th day of October 2024.

/s/ Susanne Emily Cordner
Susanne Emily Cordner
(ASB-4687-C61N)
Joseph Mitchell McGuire
(ASB-8317-S69M)
*McGuire & Associates, LLC*
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000
scordner@mandabusinesslaw.com
jmcguire@mandabusinesslaw.com

*Attorneys for Plaintiff*